J-A09045-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LAWRENCE VICTOR LARSEN | : | |
| | : | |
| Appellant | : | No. 1401 WDA 2025 |

Appeal from the PCRA Order Entered September 30, 2025
In the Court of Common Pleas of Clarion County Criminal Division at
No(s): CP-16-CR-0000188-2020

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: July 13, 2026**

Lawrence Victor Larsen ("Larsen") appeals from the order denying his first Post Conviction Relief Act ("PCRA") petition following a hearing.[1] Larsen argues he is entitled to relief on his ineffective assistance of counsel claims that direct appeal counsel failed to raise a suppression and a sufficiency issue before this Court. Because Larsen has not met his burden of demonstrating an error or abuse of discretion in the PCRA court's decision, we affirm.

The parties and the PCRA court are familiar with the facts and procedural history of this appeal. Relevantly, Larsen was charged with three counts of terroristic threats related to statements he made (1) to staff during a disturbance at a bar, (2) about an arresting officer while in a holding cell at a

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

police station, and (3) to a correctional officer while in county prison. This Court previously summarized Larsen's conduct at the bar as follows:

> The bartender testified that when a woman fell off a barstool, he approached a group of people nearby and asked if everything was okay. [Larsen] asked the bartender if he had a problem, then stated that he was a member of the Aryan Brotherhood and threatened to "knife [the bartender] in the neck." The bartender asked [Larsen] to leave and summoned bar security to speak with [Larsen]. [Larsen] again told the security guard that he was a member of the Aryan Brotherhood and that he was "going to burn the bar down" and "gut him like a fish." [Larsen] picked up a pool cue stick, but the security guard warned him not to use it, called the police, and escorted [Larsen] outside.

See Commonwealth v. Larsen, 307 A.3d 649, 2023 WL 6620636, at *1 (Pa. Super. 2023) (non-precedential memorandum), appeal denied, 315 A.3d 831 (Pa. 2024).

Larsen left before officers arrived. When officers responded to the bar, they obtained information that Larsen lived near the bar. Officer Justin O'Neil ("Officer O'Neil") and other officers immediately went to Larsen's apartment and knocked on the door. Officer O'Neil heard a thump after which Larsen opened the door, said, "Oh, fuck," and attempted to slam the door shut; however, another officer stopped the door with his foot before it shut, and officers went inside Larsen's apartment and arrested him. See N.T., 10/5/20, at 17-19.[2]

---

[2] During cross-examination at a pretrial hearing, Officer O'Neil wavered on whether he saw Larsen open the door and whether Larsen uttered the expletive. See N.T., 10/5/20, at 18-19.

While in a holding cell at the police station, Larsen stated he would "find your families," in an apparent reference to Officer O'Neil and other arresting officers. N.T., 6/9/22, at 60-61. Later that same night, at the county prison, Larsen told the officer in charge, Dan Dotterer ("Officer Dotterer") that, if the officer touched Larsen, Larsen would kill him. *Id*. at 24. Officer Dotterer also heard Larsen saying he was a "gangster" and would "reign [sic] hell down on this fucking town." *Id*. at 23.

Larsen filed an omnibus pretrial motion seeking the suppression of all statements he made following his arrest at his apartment, claiming that officers unlawfully entered his apartment and arrested him without a warrant. Larsen also requested the dismissal of all three counts of terroristic threats, arguing his statements were products of his intoxication and transient anger. The trial court denied the pretrial motions to suppress and dismiss the charges.[3]

Larsen proceeded to a jury trial on the three counts of terroristic threats. At the conclusion of trial, the jury found Larsen guilty of one count of terroristic threats, for his statements at the bar, and acquitted of him of the remaining two counts of terroristic threats for his statement at the police station and at county jail. The trial court separately found Larsen guilty of public drunkenness.

---

[3] Larsen's privately retained counsel filed the omnibus pretrial motions but subsequently withdrew in July 2021. Larsen then obtained counsel ("prior counsel") through the Public Defender's Office, and prior counsel represented Larsen at trial and through his direct appeal.

In July 2022, the trial court sentenced Larsen to fourteen months to sixty months imprisonment for terroristic threats and a flat ninety-day sentence for public drunkenness. Larsen timely filed post-sentence motions. The court granted the motion, in part, to include a minimum forty-five-day sentence for public drunkenness but denied the remainder of the motion.

Larsen took a direct appeal, and this Court affirmed. *See Larsen*, 2023 WL 6620636, at *4. Our Supreme Court denied Larsen's petition for allowance of appeal in March 2024.

Larsen timely filed a *pro se* PCRA petition in January 2025. The PCRA court appointed present counsel, who, in turn, filed an amended petition claiming prior counsel rendered ineffective assistance during the direct appeal by declining to challenge (1) the denial of his omnibus pretrial motion to suppress Larsen's statements after his arrest, and (2) the sufficiency of the evidence.[4] The court conducted a hearing at which prior counsel testified he was aware Larsen wanted to raise those issues in the direct appeal but believed the issue he raised—*i.e.*, a challenge to the trial court's denial of a motion for a mistrial—was the strongest.[5] *See* N.T., 8/8/25, at 6-14. Prior

---

[4] In his amended PCRA petition, Larsen claimed prior counsel was ineffective for not appealing the denial of a post-sentence motion challenging the sufficiency of the evidence. *See* Amended PCRA Petition, 5/27/25, unpaginated at 3-4.

[5] In the direct appeal, prior counsel raised a single issue that the trial court erred in refusing to order a mistrial after the bar's bouncer testified Larsen had, earlier in the evening, asked him whether police or probation officers

*(Footnote Continued Next Page)*

counsel explained he did not raise additional issues because doing so would detract from the best direct appeal issue. *See id*. at 7.

Upon consideration of the testimony at the hearing, as well as post-hearing briefs, the PCRA court denied relief in its September 30, 2025 order. Larsen timely appealed, and he complied with the court's order to submit a Pa.R.A.P. 1925(b) statement. The PCRA court issued a Rule 1925(a) statement relying on its order denying relief.

Larsen raises the following issues for review:

1. Did the lower court abuse its discretion and err in holding that, [Larsen's] claim that his [prior] counsel was ineffective for not appealing the order denying his [o]mnibus [pre]trial [m]otion did not have arguable merit and that there is not a reasonable probability that but for counsel's omission the outcome of the jury trial would have been different.

2. Did the lower court abuse its discretion and err in holding that [Larsen's prior] counsel was not ineffective for failing to appeal the order denying his [o]mnibus [pre]trial [m]otion [sic] regarding sufficiency of evidence on the [t]erroristic [t]hreats charge.

Larsen's Brief at 5 (internal brackets omitted).

The standards governing our review of the denial of PCRA relief are well settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any

_____

frequented the bar. *See Larsen*, 2023 WL 6620636, at \*2. As noted in the direct appeal, Larsen had obtained a pretrial ruling to preclude evidence he was on state parole at the time of the incident. *See id*.

credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144-45 (Pa. 2018) (internal citations omitted).

Generally, to prevail on an ineffectiveness claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." ***Commonwealth v. Benner***, 147 A.3d 915, 920 (Pa. Super. 2016) (internal citations and quotations omitted). The failure to satisfy any of these prongs is fatal to a petitioner's claim. ***See id***. Additionally, counsel is presumed effective. ***See id***.

Our Supreme Court has stated the following with respect to claims challenging the effectiveness of counsel in a direct appeal:

> With regard to reasonable basis in the appellate context, it is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success. To establish . . . prejudice in the appellate representation context, the petitioner must show that there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (internal citations and quotation marks omitted).

In his first issue, Larsen asserts that, while the jury acquitted him of the two counts of terroristic threats for his statements at the police station and county jail, the admission of the evidence about those incidents placed him in a "bad light" and prejudiced the jury's consideration of the count of terroristic threats related to his statements at the bar. Larsen's Brief at 19-20. Without specifying a basis on which this Court would have found error in the trial court's ruling on his motion to suppress, Larsen argues, "If the statements from Officer O'Neil and Officer Dotterer had been suppressed, the jury would have had less evidence . . . to consider in the first incident [at the bar] and may not have found him guilty." *Id*. at 20.

The PCRA court concluded the underlying suppression issue lacked arguable merit for the reasons stated in its decision denying Larsen's omnibus pretrial motion. *See* Order, 9/30/25, unpaginated at 2. The court also suggested Larsen could not prove the trial result would have been different. *See id*.

A review of the record and Larsen's brief reveal he has failed to carry his burden of demonstrating prior counsel's ineffectiveness in the direct appeal. *See Wholaver*, 177 A.3d at 144-45. Larsen merely notes his suppression motion, in which he argues officers illegally entered his apartment and arrested him without a warrant, but, at no point, did Larsen discuss why the trial court erred in denying the suppression motion or why this Court would

have granted relief in the direct appeal. *See* Amended PCRA Petition, 5/27/25, unpaginated at 3; Larsen's Post-Hearing Brief, 9/5/25, unpaginated at 4, 6-7; Larsen's Brief, at 19-20. In neither the PCRA court nor this Court has Larsen cited a case relevant to the underlying issue of warrantless entries into, or arrests in, a home. In short, Larsen has not established arguable merit to the underlying suppression issue he believed prior counsel should have raised in the direct appeal. Moreover, he has provided no basis to conclude prior counsel's omission was unreasonable or prejudicial to the outcome of his direct appeal. *See Blakeney*, 108 A.3d at 749. For these reasons, we affirm the PCRA court's denial of relief on this ineffective assistance of counsel claim.

In his second issue, Larsen asserts prior counsel deprived him of his right to argue that his conviction for terroristic threats related to his statements at the bar should be overturned. Larsen analogizes his case to *Commonwealth v. Kidd*, 442 A.2d 826 (Pa. Super. 1982). *See* Larsen's Brief at 23-24. As in his statement of the question involved in this appeal, Larsen's argument in this appeal focuses on the denial of his *pretrial* motion to dismiss the charge. *See id*. at 24. Larsen briefly references the bartender's testimony to suggest Larsen was intoxicated while at the bar and his threats "were made out of anger." *Id*. at 24.

The PCRA court determined Larsen did not prove prior counsel lacked rational basis to forgo a challenge to the sufficiency of the evidence. *See* Order, 9/30/25, unpaginated at 3. The court noted prior counsel's testimony

that he researched the sufficiency of the evidence issue and decided it would not merit relief and distract from his strongest issue. *See id*.

Larsen's present arguments to the contrary merit no relief for several reasons. First, Larsen's focus on the denial of his *pretrial* motion to dismiss the charges presents an issue he did not raise in his amended PCRA petition, the evidentiary hearing, or his post-hearing brief. *See* Amended PCRA Petition, 5/27/25, unpaginated at 3-4 (suggesting prior counsel was ineffective for not challenging the trial court's denial of a post-sentence motion raising the sufficiency of the evidence). Therefore, this issue is waived. *See* Pa.R.A.P. 302(a). Second, even if Larsen preserved an ineffective assistance of counsel claim based on the pretrial challenge to the sufficiency of the evidence, the claim would be frivolous. *See Commonwealth v. Haney*, 131 A.3d 24, 36 (Pa. 2015) (citing, *inter alia*, *Commonwealth v. Lee*, 662 A.2d 645, 650 (Pa. 1995), for the proposition that a defendant's adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case at a preliminary hearing); *see also Commonwealth v. Mullen*, 267 A.3d 507, 512 (Pa. Super. 2021) (holding that counsel cannot be found ineffective for failing to pursue a meritless claim).

Third, even if we were to construe Larsen's argument, based on *Kidd*, as a challenge to the *post-verdict* sufficiency of the evidence, no relief would be due. In *Kidd*, police arrested the defendant for public drunkenness but had to take him to an emergency room after he fell outside of jail and sustained a cut above his eye. *See id*. at 827. On the way to and at the

hospital, the defendant, who was handcuffed at the time, "repeatedly shouted obscenities and generally screamed and shouted at the officers." *Id*. At the hospital, the defendant then "told the police he was going to kill them, machine gun them, if given a chance." *Id*. The *Kidd* Court determined this evidence was insufficient to sustain a conviction for terroristic threats, noting Kidd "was obviously inebriated and in an agitated and angry state of mind," and his conduct "expressed transitory anger rather than a settled purpose to carry out the threat or terrorize the other person." *Id*.

By contrast to the evidence in *Kidd*, the bartender here described how Larsen became agitated after the bartender saw a woman falling off her barstool, went over to Larsen, and asked Larsen if everything was okay. *See* N.T., 6/9/22, at 31-32, 35. Specifically, the bartender testified Larsen's demeanor became "pretty explosive" as soon as the bartender asked whether everything was okay, and Larsen stated, "'I'm in the Aryan Brotherhood and I'll knife you in the neck.'" *See id*. at 31. After the bartender called the bouncer over, Larsen told the bouncer he would "'gut [him] like a fish[,]'" and Larsen stated the "Aryan Nation" would burn down the bar and appeared to make a phone call. *Id*. at 52. It took at least five minutes to get Larsen out of the bar. *See id*. at 54.

Based on the foregoing record, Larsen has not established any deficiency in prior counsel's assessment of the possible merits to a post-verdict direct appeal challenge to the sufficiency of the evidence. When reviewed in a light most favorable to the Commonwealth, there was ample

basis to conclude Larsen intended to terrorize others, or recklessly disregarded the risk of causing such terror, notwithstanding any intoxication or anger he felt in the moment. *Cf*. ***Commonwealth v. Falcone***, 335 A.3d 369, 2025 WL 659202, at \*3-5 (Pa. Super. 2025) (non-precedential memorandum) (rejecting the appellant's claim that evidence was insufficient to convict him of terroristic threats and distinguishing ***Kidd***). Thus, because the record supports the PCRA court's findings, and its decision evidenced no legal error, we affirm the court's determination that Larsen did not establish prior counsel's decision to forgo a sufficiency challenge was unreasonable and that no PCRA relief was due. ***See Staton***, 184 A.3d at 954.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/13/2026

- 11 -